NOT DESIGNATED FOR PUBLICATION

No. 120,353

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID WAYNE ROGERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed March 20, 2020. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

PER CURIAM: David Wayne Rogers received a life sentence with a mandatory minimum term of 25 years in prison following his guilty plea to one count of aggravated indecent liberties with a child, an off-grid crime. He also pled guilty to 27 counts of sexual exploitation of a child, severity level 5 person felonies, and was sentenced to 32 months for each count to run concurrently with the life sentence. Rogers appeals the district court's denial of his motion to depart to a lesser grid sentence. He contends the district court erred by (1) failing to apply the sentencing directives of K.S.A. 2019 Supp.

1

21-6601 and (2) failing to find substantial and compelling reasons to depart. Finding no error by the district court, we affirm his sentence.

FACTUAL AND PROCEDURAL BACKGROUND

The aggravated indecent liberties charge stems from an incident involving Rogers' five-month-old daughter. In September 2017, Rogers' wife, T.R., left him alone at home to watch their infant twins while she ran some errands. When T.R. left the house, Rogers took one child to the bedroom, laid her on the bed, and removed her clothing and diaper. He engaged in lewd fondling of the child and then began to masturbate approximately 6 to 8 inches away from her. Approximately five minutes after leaving, T.R. returned home and walked in on Rogers masturbating near the child. T.R. knew that Rogers had previously possessed child pornography, and this crime occurred the first time T.R. left the children alone with Rogers.

The 27 counts of sexual exploitation were based on sexually explicit images of prepubescent females found on Rogers' cell phone following a forensic examination. Rogers admitted he had an addiction to child pornography.

Rogers waived his preliminary hearing and pled guilty to all charges. Under Jessica's Law, K.S.A. 2019 Supp. 21-6627(a)(1)(C), Rogers faced a life sentence with a mandatory minimum of 25 years before being eligible for parole on the aggravated indecent liberties conviction. Prior to sentencing, Rogers filed a motion for durational departure from the presumptive off-grid hard 25 sentence.

In his departure motion, Rogers argued that four mitigating factors constituted substantial and compelling reasons to justify the departure. First, he was 42 years old with no criminal history. Second, he quickly accepted responsibility for his actions, fully cooperated with law enforcement during the investigation, and he expressed remorse for

2

his actions. Third, he sought counseling and treatment immediately following the incident. Rogers noted that his sex offender evaluation showed that he posed a low risk of reoffending within the next five years, and his treating therapist believed Rogers could successfully complete outpatient sex offender treatment. Finally, Rogers' wife, and mother of the victim, did not want him to be sentenced to long-term incarceration.

The State opposed the departure motion, noting that in addition to his 5-month-old daughter, Rogers had exploited more than 20 other child victims through the downloading of their images on his phone. Despite being twice caught by his wife with child pornography, Rogers failed to seek treatment even though his wife requested it. Rogers admitted to authorities that he sought out child pornography in chat rooms and distributed those images to other like-minded individuals. Finally, the State argued that there were times Rogers admitted to soliciting, and sometimes receiving, sexually explicit images from 10- to 15-year-old females. Because of Rogers' background, the specific facts of the case, and a concern for public safety, the State claimed that Rogers' proposed mitigating factors did not provide substantial and compelling reasons to depart to a grid sentence.

The departure hearing took place over two days, and Rogers called three witnesses: Dr. John Caparole; his wife, T.R.; and Dr. Bruce Nystrom. Dr. Caporale, Rogers' group therapist, is a licensed clinical psychotherapist who specializes in working with sex offenders. He testified that Rogers consistently participated in both individual and group therapy, took full responsibility for his actions, expressed regret for what he did, and expressed a desire to change his behavior. Dr. Caporale believed Rogers could successfully complete the sex offender treatment program. He also acknowledged that, even with successful completion of the program, there was a 50 percent risk of reoffending.

T.R. testified she did not think Rogers should be sentenced to the hard 25 because he voluntarily sought treatment and fully cooperated in the investigation. The district court questioned T.R. about the two times she discovered Rogers with child pornography. She first caught him with child pornography six years prior, and Rogers did not seek treatment. She caught him a second time right before they decided to have children. Again, Rogers did not seek treatment, even though T.R. asked him to do so. She also confirmed that the aggravated indecent liberties incident occurred the first time she ever left the children home alone with Rogers. Although she did not believe Rogers would do it again, she could not trust him to be alone with the children. She thought he should have an opportunity for parole after serving 2 to 5 years.

Dr. Bruce Nystrom, a licensed psychologist specializing in psychological assessments, performed an evaluation of Rogers and administered multiple psychological tests, including the Minnesota Multiphase Personality Inventory (MMPI-2), which Dr. Nystrom described as the standard of all psychological tests. Two other tests, specific to sexual issues, were also administered: the Garos Sexual Behavior Inventory and the Static-99R. The Garos test focuses on uncovering an individual's sexual behaviors and attitudes, while the Static-99R assesses an individual's risk for sexually reoffending at some point in the future. Dr. Nystrom stated the Garos test indicated that Rogers had some internal conflicts between sexual desires and interests and a resulting shame associated with acting out on those desires or interests. In other words, Rogers' inappropriate and inconvenient thoughts about his sexual desires and interests were somewhat intrusive. Dr. Nystrom noted this could lead to a lack of control.

The Static 99-R is not a psychological test but rather an actuarial assessment that quantifies the risk that a sexual offender will reoffend in the future. Dr. Nystrom testified that the Static-99R assessment showed that Rogers presented a low risk—2.1%—of sexually reoffending over the next 5 years. However, Dr. Nystrom also stated that he does not always agree with the Static-99R assessment and cautioned against placing too

much trust in the test's conclusions. For example, in Rogers' case, Dr. Nystrom noted the Static-99R assessment did not factor in Rogers' previous possession or long-term use of child pornography because those incidents were never charged and did not result in convictions. He also testified the likelihood of reoffending would be higher if the evaluation period exceeded five years.

Dr. Nystrom diagnosed Rogers with unspecified personality disorder and pedophilic disorder. He identified Rogers as a fixated offender, meaning someone who never achieved psychosexual maturity because it became fixated at some point during his development. This resulted in Rogers' preferred sexual partners being prepubescent children. Dr. Nystrom also testified that the overall treatment prognosis for fixated offenders is very poor. He recommended that Rogers enter a long-term intensive sex offender treatment.

After considering the witnesses' testimony and arguments on Rogers' motion for downward departure, the district court found two mitigating factors existed:  Rogers' lack of criminal history and his acceptance of responsibility for his crimes, cooperation with the investigation, and initiating treatment immediately after the incident. The district court did not find these mitigating factors to be substantial and compelling and denied Rogers' departure motion.

The district court accordingly imposed a life sentence with the minimum mandatory hard 25 for the aggravated indecent liberties count and 32 months' imprisonment on each of the 27 counts of sexual exploitation of a child, to run concurrently with the life sentence. The district court further ordered that Rogers be subject to lifetime parole and monitoring and to lifetime registration requirements upon release from prison.

Rogers timely appeals.

I.    DID THE DISTRICT COURT FAIL TO CONSIDER ARTICLE 66 SENTENCING GUIDANCE IN DENYING ROGERS' MOTION FOR DOWNWARD DEPARTURE?

Rogers first argues the district court failed to apply the directives of K.S.A. 2019 Supp. 21-6601 when it sentenced him to long-term incarceration and failed to consider more lenient sentencing options. He contends he is not a "dangerous offender" under K.S.A. 2019 Supp. 21-6601, which provides:

"K.S.A. 21-6601 through 21-6629, and amendments thereto, shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

Rogers' argument is raised for the first time on appeal. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why the issue is properly before the appellate court. Appellate courts may hear an issue not raised with the district court when:

"(1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights, and (3) the district court is right for the wrong reason." *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Rogers argues the first two exceptions permit us to consider this issue.

We do not agree with Rogers' argument that the "dangerous offender" status for sentencing purposes is a pure a legal question arising on proved or admitted facts and finally determinative of the case. Rogers points to the Static-99R calculation reflecting he has only a 2.1 percent risk of reoffending in the next five years as the factual basis for his claim that he is not a dangerous offender. But we note the district court made no particular factual finding concerning the risk that Rogers would reoffend in the future, and the State does not concede the actuarial assessment is accurate. Dr. Nystrom expressed significant concern about the accuracy of the test, noting the inherent unreliability problems with the outcome of the assessment. And Dr. Caporale placed the likelihood of reoffense, even with successful sex offender treatment, at 50 percent. Because no findings of fact were made by the district court that it accepted the Static-99R result as an accurate or reliable assessment of Rogers' actual likelihood of reoffending and because Rogers' argument explicitly relies on this fact, we decline to find the "dangerous offender" determination to be solely a question of law based on admitted facts.

We likewise decline to find or apply the second exception cited by Rogers—that consideration of the issue is necessary to serve the ends of justice and to prevent the denial of Rogers' fundamental rights. Because we address Rogers' challenge to the departure ruling by the district court, consideration of Rogers' new claim is not necessary to serve the ends of justice or prevent denial of his fundamental rights. Furthermore, in the absence of a departure, we observe that Rogers' sentence was for the minimum term for his aggravated indecent liberties conviction, which is consistent with the directives in K.S.A. 2019 Supp. 21-6601 for those not considered to be dangerous offenders.

Finding no applicable exception, we determine that Rogers' failure to raise the issue before the district court precludes our review of it on appeal.

II.     DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING ROGERS' MOTION FOR DOWNWARD DEPARTURE?

Rogers' second issue on appeal is his contention the district court abused its discretion by failing to find substantial and compelling reasons to depart to a grid sentence following review of the mitigating circumstances in this case.

*Standard of Review*

When reviewing a district court's decision of whether the mitigating circumstances warrant a departure sentence under Jessica's law, the appellate court applies the abuse of discretion standard of review. See *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). A district court abuses its discretion when:  (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) a ruling is based on an error of fact. See 301 Kan. at 325.

*Discussion*

Rogers contends the district court disregarded the mitigating factors and thus abused its discretion in imposing a hard 25 sentence.

Sentencing under Jessica's Law, as set forth in K.S.A. 2019 Supp. 21-6627(a), provides for a life sentence with a mandatory minimum term of imprisonment of 25 years. However, the statute expressly authorizes and provides a procedure for imposing a departure sentence from the mandatory minimum sentence. See K.S.A. 2019 Supp. 21-6627(d). In evaluating a request for a departure sentence under Jessica's Law, the district court must determine whether substantial and compelling reasons exist for a departure "following a review of mitigating circumstances." K.S.A. 2019 Supp. 21-6627(d)(1); *Jolly*, 301 Kan. at 321-23. The statute contains a nonexclusive list of mitigating

circumstances. See K.S.A. 2019 Supp. 21-6627(d)(2). We have defined "substantial" in this context as something that is real, not imagined, something with substance and not ephemeral; the term "compelling" implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary. *Jolly*, 301 Kan. at 313, Syl. ¶ 9.

In reviewing a motion to depart in a Jessica's Law case, "the district court [must] first . . . review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then, . . . the [district] court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence." 301 Kan. at 324. If the district court grants a departure, it must state on the record the substantial and compelling reasons justifying the departure. K.S.A. 2019 Supp. 21-6627(d)(1). But if the district court denies a departure, it is not required to state its reasons for the denial. *State v. Baptist*, 294 Kan. 728, 735, 280 P.3d 210 (2012), *disapproved on other grounds by State v. Jolly*, 301 Kan. 313.

Here, the district court did not abuse its discretion when it found no substantial and compelling reasons to warrant a departure to a grid sentence. At the conclusion of the second day of the sentencing hearing, consistent with our Supreme Court's guidance in *Jolly*, the district court noted its task was not to look at aggravating factors or weigh those factors against mitigating factors, but to look only at the mitigating factors.

In its evaluation of the evidence, the district court determined that two mitigating factors existed:  Rogers' lack of criminal history and the fact that Rogers took full responsibility for his actions, cooperated with the investigation, and started psychological treatment for his sexual issues. The district court did not comment on one of the mitigating factors identified by Rogers in his departure motion—the testimony of T.R. in support of a lesser sentence. Although the testimony of a victim for a lesser sentence can be a mitigating factor, that conclusion is not a mandatory one. See *State v. Heath*, 21

9

Kan. App. 2d 410, Syl. ¶ 3, 901 P.2d 29 (1995) ("The statements of victims of crime and/or their families may constitute substantial and compelling reasons for departure.").

In light of the facts of the case, the district court then determined that these mitigating factors did not present substantial and compelling reasons for departure from a Jessica's Law sentence. Though not required to provide an explanation for denial of the motion to depart, the district court here stated:

"I've listened to the particular facts. The aggravated indecent liberties charge that forms the basis of the Jessica's Law charge in Count 1, as well as, the sexual—which involved your own minor child—a 6-month-old child [*sic*]—and in addition the 27 counts of sexual exploitation of a child, which are the child pornography images that were described and that I viewed today. And the manner and way in which the nature of this offense. The inherent nature of the offense. The manner in which this was carried out.

"I am simply not forced by the facts or compelled by the facts to grant your departure. I—given your long-term nature of your struggle with this, given your fixation, given the facts of the case, given the totality of everything, I simply—including the evaluations and that testimony—I simply cannot be convinced or compelled based on the two mitigating factors that I found, that you are not likely to reoffend or that you're not a public safety risk to children in general. To your own child during her childhood and formative years. And that I should reduce your sentence. I cannot find that. So I do not grant the departure."

Given all the facts of the case, we find reasonable people could agree with the district court's evaluation and conclusion. Thus, the district court did not abuse its discretion in denying Rogers' motion for departure.

Affirmed.